CHARLES H. LEWIS *vs.* NEW YORK AND NEW ENGLAND RAILROAD COMPANY.

Suffolk.    November 14, 15, 1890. — January 10, 1891.

Present: FIELD, C. J., W. ALLEN, HOLMES, & MORTON, JJ

*Master and Servant — Defective Condition of Premises — Risk of Employment Due Care.*

If an employee complains to his employer, but not on his own account, of the defective condition of premises on which he is employed, and, upon an assurance, which does not induce him to remain, that the defect shall be remedied, continues in the employment, with full knowledge of the risk, and is injured by reason of such defect, he must be taken to have assumed the risk, or not to have been in the exercise of due care, and cannot recover against the employer for his injuries.

TORT for personal injuries sustained by the plaintiff while in the defendant's employment, on July 20, 1883.   Trial in the Superior Court, before *Mason,* J., who ordered a verdict for the defendant, and reported the case for the determination of this court.

*S. B. Allen,* (*J. F. Wheeler* with him,) for the plaintiff, cited *Snow* v. *Housatonic Railroad,* 8 Allen, 441 ; *Counsell* v. *Hall,* 145 Mass. 468; *Hough* v. *Railway Co.* 100 U. S. 213, *Missouri Furnace Co.* v. *Abend,* 107 Ill. 44, 52, *Patterson* v. *Pittsburgh & Connellsville Railroad,* 76 Penn. St. 389; *Manufacturing Co.* v. *Morrissey,* 40 Ohio St. 148; *Greene* v. *Minneapolis & St. Louis Railway,* 31 Minn. 248; *Belair* v. *Chicago & Northwestern Rail-*

*way,* 43 Iowa, 662, 671; *Laning* v. *New York Central Railroad,* 49 N. Y. 521, 536; *Clarke* v. *Holmes,* 7 H. & N. 937; *Holmes* v. *Worthington,* 2 F. & F. 533; *Southern Kansas Railway* v. *Croker,* 41 Kans. 747.

*R. D. Weston-Smith,* (*C. A. Prince* with him,) for the defendant.

MORTON, J. The plaintiff contends that there was evidence which would have justified the jury in finding that the rotten and defective condition of the pier which caused the accident was due to the negligence of the defendant, and in this we think he is right. He also contends that there was evidence to go to the jury that he was himself in the exercise of due care, and continued in the defendant's service, relying upon assurances given by one of its general superintendents that the pier would be repaired. In this, however, we cannot agree with him.

The plaintiff was superintendent of the defendant's drawbridge over Fort Point Channel in Boston. He had held that position between three and four years prior to the accident. Connected with and forming a part of the drawbridge was a pier which was planked over. While running quickly along this pier in the discharge of his duty, for the purpose of catching a line from a vessel that was going through the draw, the plaintiff broke through a rotten place in the planking, and was injured in one knee so as to be permanently disabled. He testified that, though there were some holes covered with plank, the surface of the pier " looked as fair " as the board in front of the witness stand, " but it was decayed, it must have been dreadfully decayed underneath, and a great many places were the same. Almost anywhere you see, it would look very fair, and you would go down through if you did n't look out." He also testified that a few days before the accident he had a conversation with Bent, one of the defendant's general superintendents, and told him that " the pier was in a very bad condition indeed," and " that strangers would be apt to fall through there ; not knowing where to go, they will be apt to step on to some place and get hurt, and we don't want them to get hurt "; and " I told him it was in very bad condition, and ought to be seen to before people got hurt ; says I, ' There is a number that have fell through here, and somebody is going to get badly hurt.' " In answer to the question

whether he had complained to Bent before this of the dangerous condition of the pier as it affected himself, the plaintiff said : " Well, I complained of it a number of times to him. I told him ' somebody is going to get hurt yet, there is a number fell through ' ; and the day before I got hurt there was one of the carpenters . . . fell through the corner of the house that we lived in chock up to his hip." Other witnesses called by the plaintiff described the appearance of the pier underneath as badly decayed ; one saying that the general appearance of the pier was rotten, and another that there was not much difference between the two surfaces of the planking. These and other observations made by the witnesses were not communicated to the plaintiff, and it did not appear that he had examined the pier underneath. But he had been employed there between two and three years, and it is apparent from his own testimony that he was well acquainted with the rotten and dangerous condition of the pier, and realized that he might at any time break through. The danger was to him a constant and obvious one. He chose, notwithstanding this, to continue in his employment, and he must be held to have assumed the risk, or to have been wanting in due care, unless there was some sufficient excuse for his conduct.

The plaintiff contends that he complained to the superintendent, Bent, of the condition of the pier ; that the superintendent promised a few days before the accident to repair it ; and that, relying on that promise, he continued in the discharge of his duty, and was injured because the pier was not repaired. It is a question how far and under what circumstances a servant, the performance of whose duties becomes dangerous through the neglect of his employer to keep in proper repair the premises where he works, is justified in relying upon his employer's promise to amend the defect and remove the danger, when he himself has full knowledge of the defective and dangerous condition which exists, and of the risk which he runs by continuing in the service. This case, however, does not present that question. The plaintiff did not testify, and apparently would not testify, that he continued in the defendant's employment because of the assurance of the superintendent that the pier would be repaired. Even when pressed by his counsel, he would not say that he complained to the superintendent on his own account of the bad condition of

the pier.   He testified that, in the conversation before referred
to which he had with the superintendent, the latter said " he
would have it repaired right off as soon as they could get round
to it"; and again he says that the superintendent said, " I
will get carpenters to overhaul it, and make out documents for
what plank and timber they want."   In answer to the question
" whether or not you were relying upon that at the time of the
accident," the plaintiff said, " I was expecting to see the carpen-
ters there every day working; I did n't know what day I should
see them."   The following questions were also put to him in
regard to this conversation, to which he gave the answers sub-
joined: " Question.  Now, whether or not you depended on that
conversation as a reason for your remaining with the company?
Answer.  I calculated if we could get it in good repair it would
be splendid because other people could not get hurt.   Q. Wait
a moment; now, then, Mr. Lewis, whether or not you had com-
plained to Mr. Bent before this of its dangerous condition as it
affected yourself?   A.  Well, I complained of it a number of
times to him.   I told him somebody is going to get hurt yet;
there is a number fell through, and the day before I got hurt
there was one of the carpenters . . . fell through . . . chock up
to his hip."   It is noticeable that nowhere in this conversation
nor in his answers does the plaintiff say or imply that his contin-
uance in the service was due to what Bent said in regard to the
repair of the pier; and it would be giving to the conversation
between the plaintiff and the superintendent a construction
which we think neither intended or had in mind, to hold that
the plaintiff was induced to remain in the defendant's employ
by what the superintendent said about repairing the pier, or
that the superintendent with that end in view gave the answers
which he did.

The plaintiff seems to have called the attention of the super-
intendent to the condition of the pier, and to have urged its
repair, not on his own account, nor because the discharge of his
duties was rendered more dangerous, nor because he had any in-
tention of leaving if the pier was not repaired.   But he seems to
have acted in the interests of the company, and in order to pre-
vent strangers and others coming on to the pier, and, not knowing
where to go, from getting hurt.   The natural and reasonable in-

ference from his conversations is that he expected to remain there, and, knowing the condition of the pier, expected to take the risk. His subsequent conduct in returning to the same position in the following September, and remaining till the next summer, without anything being done to the pier, and then leaving the employment, not for that but for some other reason, is also a strong circumstance tending to show that he did not rely upon the superintendent's statements in regard to repairing the pier as a reason for continuing in the service of the defendant. Most, if not all, the cases to which our attention has been directed by the plaintiff's counsel go upon the ground that the servant was led to continue at his employment by the master's promise that the defect complained of should be remedied. In some of them there is a direct request to the servant by the master or his representative to do so. No case, we think, has gone so far as to hold that where the servant does not complain on his own account, and continues in his employment with full knowledge of the risk, he can recover of the master, because the latter, when the defective condition was called to his attention by the servant, gave assurances, which did not induce the servant to remain, that the defect should be remedied.

We think, therefore, that the evidence shows either that the plaintiff was not in the exercise of due care, or that he had assumed the risk with full knowledge and appreciation of it, and the entry must be,    *Judgment on the verdict.*