## Chicago Bridge and Iron Co. v. Solomon Hayes.

1. HAZARDS—*Legal Effect of a Promise by the Employer to Repair.*—The purpose and legal effect of a promise by an employer to repair defective machinery, is to relieve the employe of the assumption by him of a risk that he would otherwise be chargeable with.

2. INSTRUCTIONS—*Where the Proof Fails to Support Promise to Repair.*—In personal injury cases where the declaration counts upon a promise by an employer to repair, and the proof to establish it wholly fails, an instruction to disregard such element of the case, if asked, should be given.

Trespass on the Case, for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. GEORGE W. BROWN, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1900. Reversed and remanded. Opinion filed April 17, 1900. Rehearing denied October 12, 1900.

JOHN A. POST and O. W. DYNES, attorneys for appellant.

JOHN REID McFEE, attorney for appellee.

MR. JUSTICE SHEPARD delivered the opinion of the court. The appellee brought this suit against appellant to recover damages for the loss of an eye, sustained by him while in its employ as a blacksmith. He had pursued his trade as a blacksmith for a dozen or more years— all his working life—and during all the six years last before the accident in question, worked for the appellant. At the time he was hurt, and for some time previous, he had charge, as head blacksmith, of the running of a large steam hammer operated by means of a steam cylinder and piston rod.

Dies to fashion the metal upon which the hammer struck were attached to and. removed from the hammer as occasion required, sometimes several times a day.

These dies were held in place by metal wedges or keys which needed to be driven out whenever a die was changed. This was done by placing a key-punch against the thin end of the wedge and striking the punch heavily with a sledge hammer. It was a part of appellee's work to hold the punch against the wedge while another workman struck it with the sledge.

During one of these die removals a splinter of steel flew from some one of the implements and entered one of appellee's eyes, forever destroying it.

A week or two before the accident the piston rod above spoken of became broken, and in being repaired was shortened from six to ten inches, and it is to such shortening of the piston that the accident is ascribed, because, briefly, the keys upon which the work was being done were thereby brought so close to the hammer frame as to increase the hazard of the work of removal. We need not enter into the details in this connection.

There is nothing in the evidence to show that appellant owed to appellee any duty of instruction or warning with reference to the work in hand, nor that appellant or any of its agents were better informed of all the attendant conditions or dangers of the situation than appellant was, if as well.

There is evidence tending to show that at the time the piston rod broke, appellee reported the circumstance to the superintendent of the shop and asked for a new one, and that after it was repaired he made complaint to the same person that it was defective in a way, and that the superintendent promised to get a new piston reasonably soon— as soon as the conditions of the work on hand would permit—and directed appellee to work ahead under existing conditions until a new rod could be obtained.

There is not, however, any evidence that appellee or appellant had any knowledge or suspicion of an increase of danger because of the shortened rod.

All that appellee testified to having told the superintendent in respect of the defect was that in consequence of it the hammer was disagreeable to work at and it was inconvenient to knock the keys out.

His other witnesses testified that he told the superintendent it was "awful hard work running the way this hammer is in—can not do much;" that "it was very inconvenient working it in the condition it is in;" that "it was very inconvenient working on account of the piston being so short."

There is not a word that appellee or the superintendent contemplated any additional danger from the claimed defect, nor can we see how in any legitimate sense the defect was in any way the proximate cause of the injury. There was no complaint of, or promise to eliminate any danger. The complaint and the promise had reference only to the presence and removal of disagreeable and inconvenient conditions affecting the amount of work to be produced, but not at all the safety of persons engaged in doing it.

The purpose and legal effect of a promise by the employer to repair defective implements or machinery, is to relieve the employe of the assumption by him of a risk that he would otherwise be chargeable with. And where, as in this case, the declaration counts upon such promise to repair, and the proof seeks to establish it, but wholly fails, an instruction to the jury to disregard such element of the case if asked, ought to be given.

The following instruction was asked to be given by the appellee but was refused by the court:

"The court instructs the jury that, as a matter of law, the evidence introduced in this case is insufficient to establish liability on the part of the defendant, because of any alleged promise to repair or remedy the machinery in question."

The refusal of the instruction was substantial error.

The rule, that if a servant who is aware of a defect in the instruments with which he is furnished notifies the master of such defect, and is induced by the promise of the latter to remedy it to remain in the service, he does not

thereafter assume the risk from such defect until after the master has had a reasonable time to repair it, unless the defect renders the service so imminently dangerous that no prudent person would continue in it, has no application to a case where neither master nor servant contemplated any additional danger to the servant in the use of the defective instrument, but only inconvenience in the work done by it. Tesmer v. Boehm, 58 Ill. App. 609.

The distinction that appellee attempts to draw between the danger in removing the key or wedge and that of working the machine does not help the case.

The error in refusing the instruction demands the reversal of the judgment and remanding of the cause, and it is so ordered. Reversed and demanded.