### Texas & Pacific Railway Company v. J. A. Nichols.

Decided December 9, 1905.

**1.—Fellow Servant—Law Construed.**

One who was working about the depot under the employment and direction of the local agent was not a fellow servant with a train porter under employment from a different source, under the Act of 1897. (Sayles' Stats., 4560h.)

**2.—Master and Servant—Notice of Defect—Assumed Risk.**

Where a servant having knowledge of the defective or dangerous condition of the platform where he was required to work made complaint of the same to his master and received assurances that the same should be remedied, he is not entitled to recover damages for any injury resulting therefrom if the complaints are made for the comfort and safety of the public rather than from any anticipated danger to himself, and if the servant is not induced by the promises of the master to continue in the service.

Appeal from the District Court of Eastland County. Tried below before Hon. D. K. Scott, Special Judge.

*H. C. Shropshire,* for appellant.—The court erred in refusing to charge the jury as requested so to do by this defendant in its special charge No. 5. Gulf, C. & S. F. Ry. Co. v. Garren, 74 S. W. Rep., 897; Southern Pacific Co. v. Lasch, 21 S. W. Rep., 563; Galveston, H. & S. A. Ry. Co. v. Drew, 59 Texas, 13; Gulf, C. & S. F. Ry. Co. v. Brentford, 79 Texas, 624.

The court erred in refusing to charge the jury as requested so to do by this defendant in its special charge No. 8, which is as follows: "If you find and believe from the evidence that at the time of the accident plaintiff and defendant's porter, Will Gillis, were engaged in the work of loading baggage on and off of one of defendant's passenger trains at Cisco, and that the acts and conduct of said porter, Will Gillis, were negligence, and that because of such negligence on the part of said porter plaintiff was injured; and you further find that at the time of

the accident plaintiff and said Will Gillis were engaged in the common service of the defendant and at said time and place plaintiff and said porter were in the same grade of employment and were engaged in doing the same character of work and were working together at the same time and place and at the same piece of work and to a common purpose, you will return a verdict for the defendant, and so say by your verdict."

It appearing from the evidence that it was a part of plaintiff's general duties to keep a look-out for any defects that might be or appear in said platform, and to make temporary repairs thereof, until such time as such defects could be permanently repaired by defendant's building and bridge department; and that plaintiff's injuries, if any, were caused or brought about by reason of his own negligence and failure to perform and discharge his general duties in the premises, it was error for the court to refuse to charge the jury as requested in appellant's special charge number seven.  Direct Nav. Co. v. Anderson, 69 S. W. Rep., 174, and authorities therein cited.

*Earl Connor* and *B. W. Patterson,* for appellee.—A porter on a passenger train, under the supervision of a conductor of such train as vice-principal, and a station porter or baggageman, under the supervision of the station agent, as vice-principal, are not fellow servants, although they may temporarily assist each other in loading baggage on and off the train.  Rev. Stats., art. 4560h; Gulf, C. & S. F. Ry. v. Elmore, 79 S. W. Rep., 891.

Any statement or act on the part of appellant's agents with reference to the removal of the snow and sleet, brought to the knowledge of appellee, should be considered by the jury in passing upon the question of contributory negligence, regardless of what prompted such statement or acts of appellant's agents.  Texas & N. O. Ry. Co. v. Bingle, 42 S. W. Rep., 971.

STEPHENS, Associate Justice.—Appellee was working for appellant at its freight and passenger depot at Cisco, Texas, under the direction of the local agent, and while engaged in handling freight and baggage, and assisting to load and unload the same, undertook, in connection with Will Gillis, a train porter, to lift a heavy trunk from the depot platform to the baggage car, when the trunk slipped out of the hands of the latter and fell on appellee, producing the injuries of which he complains.

The evidence warranted a finding that Will Gillis was guilty of negligence in not taking better hold of the trunk and that this caused it to slip out of his hands and produced the injury complained of.

The testimony also raised the issue of negligence alleged against appellant as to the condition of the depot platform.

The testimony as to the character and extent of appellee's injuries was not altogether satisfactory, but we are not able to say that it clearly did not warrant the verdict.

The third paragraph of the charge, submitting these issues to the jury, is not subject to any of the numerous objections urged against it in appellant's brief.  The last clause of the sixth paragraph answers all the objections urged to this paragraph of the charge, except the one

stated in the fourth and fifth propositions under the second assignment, which is answered by the testimony of appellee, to the effect that he had called attention to the condition of the platform and that the local agent had promised to have the ice and snow removed therefrom.

The court did not err in refusing to give the numerous special charges submitted by appellant. One or two of them only will be noticed. The eighth special charge was properly refused because appellee, who was working about the depot under the employment and direction of the local agent, was not, within the meaning of our present fellow servant act, in the same grade of employment with Will Gillis, who was porter on the passenger train under employment from a different source. Such we understand to be the construction given that law in Gulf, C. & S. F. Ry. v. Elmore, 79 S. W. Rep., 891.

The nineteenth assignment, complaining of the refusal to give the seventh special charge, has given us more trouble than any other, but we have finally concluded that the evidence did not quite raise the issue as it was presented in that charge. While the testimony of the local agent tended to prove that the duty of making slight temporary repairs about the depot rested on appellee, it did not quite make it his duty to keep a lookout for defects, as appellant sought by this charge to have the jury instructed.

The testimony complained of in the twentieth and twenty-first assignments was competent as impeaching testimony.

All issues being disposed of by the above conclusions, the judgment stands affirmed.

### ON MOTION FOR REHEARING.

On the original hearing the conclusion was reached that the court did not err in refusing to give any of the dozen or more special charges requested by appellant, two of which only were discussed in the opinion then filed. We are now of opinion, on reconsideration of the case, that the court should have given the fifth special charge, reading: "In this case you are instructed that you will disregard all testimony in regard to any promise made to plaintiff by defendant to remove the snow and sleet off of and to repair the platform in controversy unless you find and believe from the evidence before you that such promise was made to plaintiff by defendant in response to an objection by the plaintiff to further work and discharge his duties upon said platform, and that such promise was made for the purpose of inducing plaintiff to remain in the employment of defendant." That this phase of the issue of assumed risk was raised by the evidence is shown by the following testimony of appellee given on cross examination: "At the time of the accident the snow and sleet had been on the ground eight or ten days. In getting the baggage from the baggage room to the train I would turn the trunks over and over on the platform with my hands on the ice and snow, and the baggage from the train was just dumped out of the car onto the snow and mud. The first time I mentioned to the agent about having the snow removed from the platform must have been two or three days after the snow fell; I know I mentioned it to him five or six times prior to the time I got hurt. The reason I did not mention

it to him the first day after the snow fell was because I kept thinking it would melt off. I don't remember the words I used the first time I mentioned it to him, but it was that I wished he would have the section hands clean it off; I suppose that is all I said to him about having the snow cleaned off. I told him that several times, and that we could not work on it. I was thinking about it making me sick and did not think about having any accident. Sometimes Mr. Langston would make no reply at all, and sometimes he would say that as soon as he could see the section men he would have it cleaned off, but he never did. I also told him about passengers kicking about handling their trunks there in the snow and sleet. One time it was a drummer, and another time a lady complained about it. When I told Mr. Langston that, he said he would let them know that he was agent there and that he would have it cleaned off when he got ready. I don't remember the date I told him that; it was during the time the snow was on the platform; I know it was not on the day the accident occurred. A lady had a new trunk and spoke to me about handling her trunk in the sleet, and I told her that Mr. Langston was agent and that she could see him, and she saw him about it." It is unreasonable to suppose that appellee thought of giving up a permanent job on account of a Texas snow, which he "kept thinking" would soon "melt off." His testimony indicates rather that he requested the removal of the snow for the comfort of himself and passengers and not from apprehension of danger.

The law on this subject is very clearly stated by the Supreme Judicial Court of Massachusetts in Lewis v. New York & New England R. R. Co., reported in the Lawyers' Reports, annotated, Bk. 10, page ·513, also in 26 N. E. Rep., 431, which was a case of personal injury caused by the rotten and defective condition of a pier in a drawbridge over Fort Point Channel in Boston, of which condition the party complaining had knowledge before the accident and sought to escape the legal consequences of this fact on the ground that he had complained to the superintendent of the company owning the bridge of the condition of the pier, and that the superintendent had promised a few days before the accident to repair it. In disposing of this case the court say: "The plaintiff seems to have called the attention of the superintendent to the condition of the pier, and to have urged its repair, not on his own account nor because the discharge of his duties was rendered more dangerous, nor because he had any intention of leaving if the pier was not repaired, but he seems to have acted in the interest of the company and in order to prevent strangers and others coming onto the pier, not knowing where to go, from getting hurt. The natural and reasonable inference from his conversation is that he expected to remain there, and, knowing the condition of the pier, expected to take the risk. His subsequent conduct in returning to the same position in the following September and remaining till the next summer without anything being done to the pier, and thus leaving, not for that, but for some other reason, is also a strong circumstance tending to show that he did not rely upon the superintendent's statements in regard to repairing the pier as a reason for continuing in the service of the defendant.

"Most, if not all, the cases to which our attention has been directed by the plaintiff's counsel go upon the ground that the servant was led

to continue at his employment by the master's promise that the defect complained of should be remedied. In some of them there is a direct request to the servant by the master or his representative to do so. No case, we think, has gone so far as to hold that where the servant does not complain on his own account and continues in his employment with full knowledge of the risk, he can recover of the master because the latter, when the defective condition was called to his attention by the servant, gave assurance which did not induce the servant to remain, that the defect should be remedied." This decision, together with Sweeney v. Berlin & J. Envelop Co., 101 N. Y., 520, 5 N. E. Rep., 358, 54 Amer. Rep., 722; and Bodwell v. Nashua Manufacturing Co. (N. H.), 47 Atl. Rep., 613, in line with it, is referred to with approval by the Supreme Court of this State in Gulf, C. & S. F. Ry. Co. v. Garren, 74 S. W. Rep., 897; and undoubtedly states the law.

It seems at least doubtful whether the presence of snow and ice on the platform should have been submitted to the jury at all as a distinct ground for recovery—indeed, we think it should not have been—and consequently whether that feature of assumed risk should have been submitted to the jury; but both issues were submitted and the latter in a manner calculated to mislead the jury in the absence of further instructions, and for that reason the phase of the issue of assumed risk covered by the special charge quoted above, which was not included in the main charge, should have been submitted substantially as requested.

Because the court refused to give this special charge the rehearing is granted, the judgment reversed and the cause remanded for a new trial.

*Reversed and remanded.*