JONES v. WALKER COUNTY LUMBER CO.

(Court of Civil Appeals of Texas. Texarkana. Dec. 10, 1913. Rehearing Denied Jan. 8, 1914.)

1. MASTER AND SERVANT (§ 129*)—INJURIES TO SERVANT—DEFECTIVE APPLIANCES—PROXIMATE CAUSE.

Plaintiff, a log buncher, was employed by defendant in the woods to drag logs into bunches for convenient loading, the work being done by skidding tongs, to which a team was attached. The tongs furnished plaintiff were defective, so that they would not always hold the log when applied. He testified that he put the tongs on a log, and, after properly setting them, stepped aside to a suitable place where there was no danger, and when he started the team he was struck by a pole, but did not know whether the log rolled on the pole or was already on it when he started the team. *Held*, that the·employment of the pole and not the defective character of the tongs was the proximate cause of the injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 257–263; Dec. Dig. § 129.*]

2. MASTER AND SERVANT (§ 221*)—INJURIES TO SERVANT — DEFECTIVE TOOLS — ASSUMED RISK.

Where a servant had been furnished defective tongs with which to conduct logging operations in the woods, and had been promised new ones by his foreman on making complaint, but the foreman's promise to furnish new ones prior to the servant's injury had not induced him to continue in the employment with full knowledge of the danger, he assumed the risk.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 638–640, 642–645; Dec. Dig. § 221.*]

Appeal from District Court, San Jacinto County; S. B. Hightower, Judge.

Action by A. J. Jones against the Walker County Lumber Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Wm. McMurrey and F. O. Fuller, both of Cold Springs, and R. J. McMurrey, of Anahuac,· for appellant. J. V. Lea, of Houston, J. M. Hansbro, of Cold Springs, and Crook, Lord, Lawhorne & Ney, of Beaumont, for appellee.

WILLSON, C. J. Appellant, plaintiff below, was a "log buncher" for appellee. In his petition appellant alleged that his duty as such log buncher "consisted of dragging logs into bunches for the convenience of defendant's (appellee's) carts and wagons in loading said logs; that he bunched said logs by engaging them at one end with a tool known as 'skidding tongs,' which was fastened to a pull chain by which means the log was drawn by a team of horses." His contention was that he was injured as the result of the failure of defendant to exercise ordinary care to furnish him a reasonably safe pair of "skidding tongs" to use in bunching logs. After hearing the evidence, the court instructed the jury to return a verdict in favor of appellee, and, the jury having

returned such a verdict, rendered judgment that appellant take nothing by his suit.

As described by appellant, testifying as a witness, the tongs in question in some respects were like common pothooks. They were made of two pieces of iron or steel, curved, crossing each other near the top ends thereof, and · riveted together where they crossed each other. At the lower extremity of each of the curved prongs was a hook sharpened to a point, so it would take hold of a log. Logs were dragged by means of a chain attached to the other ends of the prongs. The effect of force applied to these ends was to draw the other ends, when attached to a log, towards each other, so that the greater the force applied the more secure was the hold of the tongs on the log. Appellant testified that the manner of using tongs in good condition was to attach them to a log by hand, and then move to one side before starting the horses to pulling. The tongs in question, he said, had become so sprung that frequently they would ·not hold the log when so applied, and it then became necessary, as it did on the occasion when he was hurt, to hold them in place with his hands until the horses pulled on them hard enough to set the points thereof securely in the log. Appellant was injured as the result of a blow from a pole, moved by a log as it was being dragged by the horses. His account of the accident was as follows: "I put them (the tongs) on a log, and, after turning the log loose and properly setting them on there, I stepped out, of course, to a suitable place where there was no danger, and they turned the log loose, and of course I had to step up there and pick those tongs up and place them there, and after putting them there then my team tightened up to catch hold of the log, and when I went to get out of the way I discovered that pole. I don't know whether the log was already on it or whether the log rolled on it, but anyway the pole struck my leg and broke it before I could get out to a place of safety."

[1] In determining whether the court should have instructed the jury as he did or not, the first question to be considered is, Did the testimony make an issue for the jury as to whether appellee had been guilty of negligence as charged or not? The testimony was sufficient to show that the tongs were defective, but we do not think it was sufficient to support a finding that the defect was the proximate cause of the accident resulting in the injury to appellant of which he complained. The defect in the tongs had nothing to do with the movement of the pole which struck him. The pole would have moved as it did had the tongs been without a defect. Appellant does not question this, but says that but for the defect it would not have been necessary for him to hold the tongs until the horses commenced to pull thereon,

and that, if it had not been necessary for him to so hold the tongs, he would have been at a point far enough away from the log to have escaped injury by the movement of the pole. That may be true; but still the fact was that the movement of the pole was the efficient cause of his injury, and it conclusively appeared that the movement of the pole was not in any way due to any act or omission on the part of appellee. Therefore, on the ground that it appeared that the negligence of appellee complained of was not the proximate cause of the accident, we think the court should have peremptorily instructed the jury as he did.

[2] And for another reason suggested by the testimony, we think the action of the court was not erroneous. Appellant was of mature age, had worked as a log buncher during 23 years of his life, and knew all about the danger involved in such work. He knew the tongs were defective, and on the day before he was injured had reported the fact to his foreman, one Byrd. The rule applicable to such a state of facts has been stated to be: "If a servant knows of the danger in prosecuting the master's work, or if it is so patent that an ordinarily prudent man would have seen it, and he continues in the employment without complaint, or without assurance by the master that the danger will be lessened or obviated, he cannot hold the master liable for injuries received in such employment, and the rule is the same with respect to those risks which first arise or become known to the servant during the service as to those in contemplation at the original hiring." 20 A. & E. Enc. Law, p. 124. Appellant insists his case is not within the rule, but within a qualification of it as follows: "If the defects grow out of the want of ordinary care and vigilance on the part of the master in providing or maintaining the appliances, and are not so serious but that with care and prudence the appliances may be safely used, and at the request of the master the servant continues to use them and is injured, notwithstanding the exercise of care and prudence, he may hold the master liable." 20 A. & E. Enc. Law, p. 126. In support of his contention, appellant refers to his testimony as a witness showing that, when he notified the foreman of the defect in the tongs, the foreman told him "to go ahead with them, that he would supply him [me] with a new pair as quick as he could get them out from the mill, that he was expecting them every day." If that was all the record showed with reference to this phase of the case, and if it appeared that an issue as to negligence vel non on the part of appellee was made by testimony, appellant's contention that his case should have gone to the jury would be meritorious. Appellant was the only witness, and he further testified as follows: "They [appellee] were supposed to furnish the men with tools to work with. If a fellow has got tools he needs, and they are all right, his foreman would not know anything about it. He turns them in and he notifies him for the purpose of getting a tool repaired so he could do good work with it. That is not the reason I told Mr. Byrd. I knew—well, there was danger as far as that is concerned. In that work there is some danger. As to my knowing that all of the time, well, there is danger anywhere in the woods. Everybody knows that. When those tongs would get out of repair, whoever was using them was supposed to report them to the foreman, and the foreman would bring them out another pair. I asked him to bring me another pair on this occasion because they had always done it and that was the custom. I did not say to Mr. Byrd: 'You furnish me a pair of tongs or I will quit.' I did not have to quit. I did not consider it so dangerous that I was going to quit. He promised to fix it. Why, if he had told me he would not get me any other or fix them either, I don't suppose I would use them. I told him I wanted another pair of tongs, and he said 'All right.' I knew he was going to give me some other tongs. Oh, no; I did not have in mind that was a dangerous thing. * * * I did not tell Byrd that I was figuring on quitting if he did not fix the tongs for me, and I did not have that in mind at all. I did not tell Byrd anything about quitting at all. That was not considered, as it did not enter my mind at that time. As to whether I was simply turning in the tongs because they got loose in the rivets, well, they were getting worn and they needed going to the shop to get fixed. They needed the blacksmith hold of them. I could not handle as many logs and not as often with them. I wanted tools to handle my work properly and easier for me. That is why I reported them in bad condition, because I wanted them for good work. * * * I wanted tongs to handle the logs with less trouble to myself and less work on the team, too. It is a heap of trouble to back up your team, and works them. That is the reason I wanted the tongs, so I could do that." The testimony quoted, considered as a whole, we think brings appellant's case within a qualification of the rule he invokes, applied by the court in T. & P. Ry. Co. v. Nichols, 41 Tex. Civ. App. 119, 92 S. W. 411. That qualification has been stated as follows: "In order that the rule stated shall apply, it is necessary that the promise made by the master should have been the cause which induced the servant to continue in the employment. If for any other reason the servant continues in the employment, the master is not liable for the injuries received therein." 20 A. & E. Enc. Law, p. 128. The application of the qualification stated is illustrated in the Nichols Case referred to and others cited in a note to the quotation made from the ency-

clopedia mentioned. It was applied in Bodwell v. Nashua Mfg. Co., 70 N. H. 390, 47 Atl. 613, where the Supreme Court of New Hampshire said: "The promise to repair was not shown to have any connection with the plaintiff's continuation in the employment. 'No case,' said the court in Lewis v. Ry. Co., 153 Mass. 73 [26 N. E. 431, 10 L. R. A. 513], 'has gone so far as to hold that, where the servant does not complain on his own account, and continues in his employment with full knowledge of the risk, he can recover of the master, because the latter, when the defective condition was called to his attention by the servant, gave assurances, which did not induce the servant to remain, that the defect should be remedied.'"

There is no error in the judgment, and it is affirmed.