# FIFTH DISTRICT, 1901.

---

## LADONIA COTTON OIL COMPANY v. M. V. SHAW.

### Decided October 29, 1901.

**1.—Master and Servant—Defective Appliances—Servant's Knowledge.**

The master is not liable for injuries to the servant by reason of defects in the machinery used which were known to and understood by the servant, although he was without experience in such work.

**2.—Same—Failure to Warn Servant.**

Nor is the master liable because of his failure to warn the servant of the danger incident to the work, and arising from defective condition of the machinery, where the servant had knowledge of such danger.

**3.—Same—Defect in Appliances—Knowledge Imputed to Servant.**

Where the danger incident to a defect in the machinery is apparent from the defect itself, considering the manner in which the work. is done and the other conditions, the servant, having knowledge of the defects and conditions, is held to know the danger.

**4.—Same—Manner of Conducting Business—Voluntary Assumption.**

It is immaterial that the business of the master was conducted in a dangerous manner, where the servant voluntarily entered upon the work knowing how it was carried on and the hazards of his employment.

**5.—Same—Fact Case.**

See the opinion for facts under which an employe in an oil mill, whose hand was injured while he was engaged in feeding an oil cake crusher not in good repair and proper condition, is held not entitled to recover for the injury.

Appeal from Fannin. Tried below before Hon. Ben H. Denton.

*H. P. Lane* and *Lusk & Thurmond,* for appellee.

*W. A. Bramlette* and *Taylor & McGrady,* for appellant.

TEMPLETON, Associate Justice.—The appellee, M. V. Shaw, was an employe of the appellant, the Ladonia Cotton Oil Company, and lost an arm while engaged in feeding a crusher in the company's mill. He brought suit on account of his injuries, and prosecuted same successfully in the District Court.

In his petition, Shaw attributed his injuries to defects in the crusher, and to the failure of the company to warn him of the consequential danger. Contributory negligence and assumed risk were the defenses relied on by the company. Whether the evidence was sufficient to establish liability is the principal question presented upon this appeal. It was shown that the crusher consisted of two large rollers covered with teeth or burrs. The rollers, when in operation, revolved rapidly toward each other, the burrs thereof almost touching. They were inclosed in a wooden framework, and over them was a plank platform, which was held in place by an iron bar around the same and to which it was riveted. In the center of the platform was a slot into which oil cakes were fed into the crusher. When the platform was in proper condition the top thereof was several inches above the rollers. At the time of the accident the bar was broken, one of the planks was loose, and the platform sagged down until it was only slightly higher than the rollers. The crusher was fed by the feeder taking an oil cake and putting one end thereof into the slot, when it would be seized by the teeth or burrs of the rollers, and carried between the rollers and broken up. When Shaw was hurt the teeth were dull, and for that reason the rollers would not readily take hold of hard cake, and it was necessary to job or punch such cake against the rollers.

Shaw had worked at the mill, loading meal on cars, for about a week, when, on the night of January 23, 1899, he was employed by one Samuels, the night foreman, to feed the crusher that night. Shaw was then 26 years old and without experience in such work. According to Shaw's own testimony, he was asked by Samuels, when he was employed, if he had ever done such work, which inquiry he answered in the negative. He was then asked if he thought he could feed the crusher, and replied that he could try. After he had been at work about one half hour, one Roper, the day foreman and general superintendent, came in. The cake Shaw was feeding was going through nearly whole, and Shaw says that Roper got a wrench and screwed up a nut. He further says that Roper then took a cake and shoved it through himself; that the cake did not go in quickly and broke in large pieces; that Roper punched at one of the pieces, and jerked his hand back like it was hurt, though he did not say it was; that Roper then said to him: "When those pieces break up and get to dancing that way, just take another cake and job them through. Don't take your hand and pull them out." He denies having received

any other instruction or warning. He continued to feed the crusher all that night. He began work again early the morning of January 25th—having been employed by Roper the night before to work that day,—and worked three, or three and one-half hours, when he was injured. He testified that he was injured while trying to job a cake between the rollers; that some of the cakes were hard, and some soft, while some were hard at one end and soft at the other end; that the rollers took hold of the soft cakes instantly upon the same touching the burrs, but that generally hard cakes had to be punched against the rollers; that the cake he was handling when hurt was soft at one end and hard at the other end; that he stuck the hard end in the slot and punched it against the rollers, when it suddenly went in, his hand going in with it. He admitted that he knew the condition of the platform over the rollers, and that if his hand got in between them it would be injured, but denied knowing that the burrs were dull until after the accident.

This evidence is sufficient to establish the fact that the crusher was defective as alleged, that is, that the platform over the rollers was sagged down, thereby diminishing the protection afforded by the platform to the hand of the feeder, and that the burrs were dull, thereby making it necessary for the feeder to job the hard cake against the rollers, when such action increased the danger of the feeder's hand being caught and crushed. Also, it is sufficient to show that the defects were such that they ought have been known to the company and remedied. And it is not an unreasonable conclusion from the evidence that, had the defects not existed, Shaw would not have been injured. But it is elementary law that if the defects and dangers were known to and understood by Shaw the company would not be liable. It is admitted that he knew of the defects in the platform, the knowledge having been acquired when feeding the crusher at night. It is contended, however, by his counsel that, while he knew the defective condition of the platform, he did not know the danger arising from the defects. The danger was that, on account of the platform being sagged down, the protection to the hand of the feeder was lessened, in that the height of the platform served in large measure to regulate the closeness of his hand's approach to the rollers. Of course, the closer his hand approached the rollers, the greater was the danger of its being caught between them, and this must have been known to Shaw. He could not help knowing that a higher platform would have afforded more efficient protection. The danger of feeding the crusher with the platform in its defective condition was as apparent as the defect was obvious.

As to the other defect, it is urged that Shaw did not know that the burrs were dull. He knew, however, of the effect of the burrs being dull. He knew that, for some reason, the rollers would not readily take hard cake, and that generally such cake had to be punched against the rollers. That he did not know why this was so was immaterial, unless knowledge of the reason would have enabled him to do the work in a different and safer manner, or informed him of the danger more effectively than

knowledge of the other conditions. If he had been told that the burrs were dull, and that this was the reason why the rollers would not take hard cake, still he must and would have continued feeding the cake exactly as he had been doing. Neither would such information have added to his ability to comprehend the danger. The danger was that when the hard cake was jobbed against the rollers, and it was taken in or broken up, that the force given to his hand by the act of jobbing the cake in would (the resistance being removed by the breaking up or going in of the cake) tend to carry his hand between the rollers. This was as patent without knowledge that the burrs were dull as it would have been with such knowledge. Not only did Shaw know of the defects, but he also knew the condition of the cake he was feeding,—that some were soft, some hard, and some partly soft and partly hard. He had fed thousands of the cakes, including many of the kind he was feeding when injured, and knew how the crusher received each kind. Under the conditions shown, Shaw's limited experience in such work would not be sufficient ground for holding him ignorant of the danger arising from the known defects. He had reached the age of maturity and discretion, and the defects, when known, carried with them knowledge of the attendant danger, even to the unskilled worker. It is true that when a defect in machinery which is being used by the operative is known to him, but the danger arising therefrom is obscure, and information, other than that derived from observation of the defect and other visible surrounding conditions is necessary to disclose the danger, then knowledge of the defect is not held to be knowledge of the danger. But when the danger incident to the defect is apparent from the defect itself, considering the maner in which the work is done and the other conditions, the operative, having knowledge of the defects and conditions, is held to know the danger. In this case the defects complained of and known to Shaw, and the conditions under which the work was being done, would have suggested to any man of ordinary prudence and intelligence the danger of the work. The injury to Shaw resulted, in the course of the operation of the plainest and simplest natural laws, from the known conditions under which the work was performed; and it required no experience, or at least none greater than that he had, to enable him to appreciate the risk. That the business was conducted in a dangerous manner—conceding that it was so conducted—is immaterial, since he voluntarily entered upon the service, knowing how it was carried on, and the hazards of the duties of his employment. Lastly, it is insisted that he was inexperienced and unwarned. That Roper gave him a species of warning is admitted. Conceding that the instruction given was not very explicit, still, it is apparent that further warning was unnecessary. The dangers to which he was exposed being known to him, it would have been useless for the company to have informed him of them. Railway v. Somers, 78 Texas, 439; Railway v. Williams, 72 Texas, 159; Railway v. Bradford, 66 Texas, 732; Railway v. Conrad, 62 Texas, 627; Railway v. McCarty, 64 Texas, 632; Railway v. French, 86 Texas, 96; Railway v. Lempe, 59

Texas, 19; Rogers v. Railway, 76 Texas, 502; Green v. Receivers, 79 Texas, 130; Railway v. Scott, 62 S. W. Rep., 1077; Brown v. Miller, 62 S. W. Rep., 547.

Because the appellee's own testimony shows that the company is not liable to him for the injury of which he complains, the judgment of the trial court is reversed, and judgment is here rendered for the appellant.

*Reversed and rendered.*

Writ of error refused.