HOOD v. HOUSTON PACKING CO. †

(Court of Civil Appeals of Texas. Nov. 23, 1910. Rehearing Denied Jan. 11, 1911.)

1. MASTER AND SERVANT (§ 217*)—ASSUMPTION OF RISK.

Plaintiff was employed by a packing company to work on a sausage grinder, and had worked about a month and a half before he was injured. The day before he was injured the machine was not working well, and plaintiff and the foreman took the machine apart and took the knives out, and, after seeing that they were dull, the foreman put them back, and plaintiff went on with his work. The machine did not feed well, and plaintiff pushed the meat down upon the knives with his hands, and was familiar with the way in which the conveyor cut the meat and drew it into the machine, and knew that, if his hand came in contact with the conveyor, it would be drawn into the machine. His hand was caught by the conveyor while pressing the meat down and drawn into the machine. *Held,* that his injuries were caused from a risk which he assumed as incident to the employment, and for which his employer was not liable.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574–600; Dec. Dig. § 217.*]

2. MASTER AND SERVANT (§ 217*)—ASSUMPTION OF RISK—KNOWLEDGE OF DANGER.

A master is not liable for an injury to a servant who knows that the machinery he is operating is defective and dangerous, and who, though protesting, continued to use it, in the absence of an express promise by the master to repair the defect.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574–600; Dec. Dig. § 217.*]

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Action by J. C. Hood against the Houston Packing Company. Judgment for defendant on a directed verdict, and plaintiff appeals. Affirmed.

Joe H. Eagle and J. H. Davenport, for appellant. C. R. Wharton, for appellee.

NEILL, J. The appellant, by his next friend, sued the appellee to recover damages for personal injuries received while in the latter's employment. He alleged as his cause of action that he was employed by the defendant to feed meat into a large sausage mill or grinder owned by defendant at its plant; that the mill or grinder was operated by steam, and revolved in an inclosed cylindrical iron or steel compartment, in one end of which were rotary steel knives for cutting meats into sausage; that in the discharge of his duties of employment it was necessary for plaintiff to place the meat in the hopper of the machine with his hands continuously while it was in operation; that on June 29, 1906, plaintiff, while in the exercise of due care and caution for his own protection and safety, in feeding meat into the hopper, got his hand suddenly caught by the rapidly revolving feeder inside of the machine, and his hand and arm were drawn into the machine and thereby mangled, crushed, bruised, and torn into shreds up to his elbow before the machine could be stopped; that as the result of his injuries his arm was thereafter amputated five inches below the shoulder joint; that defendant was guilty of negligence proximately causing plaintiff's injuries, in that the sausage grinder was old and worn, and the conveyor and knives in

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error denied by Supreme Court.

the same had been allowed to become dull so that it would not readily cut the meat fed into it, but caused the meat to clog in and upon the conveyor and knives, so that it was necessary for the plaintiff to push or bear down upon the meat by the pressure of his hands in order to properly feed the machine; that by reason of using his hands, caused by the dullness of the conveyor and knives, his hand was caught in the machine, crushed, and mangled, which would not have occurred if the machine had been in proper condition and repair; and that defendant was further negligent in not having the machinery conveying the power to the sausage mill in such repair and condition that the power could be thrown off the machine instantly in case an accident should occur, which was well known to defendant at and before the time that plaintiff's injuries were inflicted, but unknown to the plaintiff. The damages were laid at $20,500. The defendant answered by general denial, and pleas of contributory negligence and assumed risk. The plaintiff, by a supplemental petition, then alleged that he knew of the defective condition of the machinery, in that the sausage grinder was old and worn, and the conveyor and knives were so dull that the machine would not readily cut the meat fed into it, and that the dullness caused the meat fed into it to clog upon the conveyor and knives; that plaintiff informed his foreman of such defective condition of the machinery a day or two prior to his injuries, and the foreman then assured him there was no danger to plaintiff involved in continuing to use the machinery in its defective condition, and promised him that he would repair, or have repaired, said defects in the machinery, and directed plaintiff to continue his work until the repairs could be made; that plaintiff, relying upon the assurance and superior knowledge of the foreman, continued to work with the machine, exercising due care, until he was injured. After the evidence was heard the trial court peremptorily instructed the jury to return a verdict for the defendant. This appeal is from the judgment entered upon the verdict found in obedience to the court's charge.

The only assignment of error attacks the charge of the court in peremptorily instructing a verdict for the defendant. The undisputed evidence shows that the plaintiff while in the employ of defendant in feeding its sausage grinder got his hand caught in it, and, in consequence, sustained the injury alleged in his petition. He testified: "I worked for the packing company about a month and a half. I was put to work on the sausage grinder, and they showed me how to put the meat in the hopper so that the conveyor would carry it against the knives. The day before I got hurt the machine was not running good. That was the first time I noticed it not running well. It did not cut the meat, and the meat did not go out as fast as it should, and I reached the conclusion that the knives were dull. I took the plate off, and also the knife, and it was dull, and I put it back and went on using it. We would take the machine apart and put in new plates frequently. Sometimes I would do it myself. There was nothing complicated about it. Anybody could do this that had seen it done. The day before I got hurt, when the knife got dull, we had the knife and plate off. I do not think we had a new knife. I do not recall whether we did or not. The day I got hurt, early in the morning, the machine showed signs of not feeding well. The meat would not go through very well. The conveyor would carry it to the knife (and hopper), and I would have to push it down with my hands to make the conveyor catch it and carry it to the knives. I thought as soon as it backed up that it was the old dull knife—I knew it was. I knew the knives were what was the matter. I knew the knives would not cut the gristle and meat and all. Mr. Jeanecke and I took the plates apart, and took the knives out, and I looked at the knives, and saw they were dull, and he put them back, and I went to work with it, and the meat kept backing up in the hopper, and I kept pressing it down with my hands. I would put the meat in there and press it down with my hands. Always used my hands. I had never seen anything else. I never saw a stick around there. I would press it down, and I knew that, if my hand came in contact with the conveyor, it would catch my hand where the conveyor caught the meat. I saw the conveyor catch every piece of meat that had gone through the conveyor for three weeks, and I stood right there where I could see that conveyor catch the meat and carry it to the knife, and I knew if I ever got my hand to where the conveyor caught the meat it would catch my hand. I knew that as well as anybody living. I knew it as well as Mr. Jeanecke, and as well as Mr. Scheiler (the foreman). I knew it was dangerous. Anybody with the simplest intelligence would know if you put your hand in a sausage mill it would be dangerous if it came in contact with the knives. The conveyor is what caught my hand, and it pulled it into the machine. At the time that the conveyor caught my hand and dragged it in there I was shoving down the meat. I had not filled the machine up. It was only about a third full. Mr. Jeanecke had shown me how to run the machine. He said if I ever got my hand caught in there I would get it cut off. If he had not told me, certainly I would have known that. Any one would." It thus appears from plaintiff's own testimony his injuries were caused from a risk which he assumed as incident to his employment, for which defendant is not liable (Maxwell v. Wallan, 121 S. W. 182; Ladonia Company

v. Shaw, 27 Tex. Civ. App. 65, 65 S. W. 693; Krisch v. Richter, 130 S. W. 186; Railway v. Martin, 21 Tex. Civ. App. 207),[1] unless he made known to defendant the defect in the machine, if it was defective, and it expressly promised to repair them. The plaintiff's own testimony, as well as the uncontroverted evidence, shows that no such promise was made.

It is well settled that a master is not liable for an injury to a servant who knows that the machinery he is operating is defective and dangerous, who, though protesting, continues to use it, in the absence of an express promise by the master to repair, or have repaired, the defect. Hillje v. Hettich, 95 Tex. 325, 67 S. W. 90; T. & N. O. Ry. v. Bingle, 91 Tex. 287, 42 S. W. 971; G., H. & S. A. Ry. Co. v. Drew, 59 Tex. 10, 46 Am. Rep. 261; St. Louis, etc., Ry. Co. v. Kern, 100 S. W. 971.

In view of the undisputed evidence in this case, the peremptory instruction was proper. Therefore the judgment is affirmed.