DAYTON LUMBER CO. v. HASTINGS. ·

(Court of Civil Appeals of Texas. Galveston. Nov. 25, 1912. Additional Findings of Fact Jan. 10, 1913.)

MASTER AND SERVANT (§ 129*)—INJURY TO SERVANT—PROXIMATE CAUSE—MACHINERY.

Where plaintiff, employed to fix machinery when defective, attempted to pull a sprocket chain, which from its worn condition had parted and wound itself around a sprocket wheel, off from the wheel, and was injured by the chain suddenly coming off by breaking or unhooking, causing his hand to fly back against a saw, the worn condition of the chain was not the proximate cause of the injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 257–263; Dec. Dig. § 129.*]

Appeal from District Court, Liberty County; L. B. Hightower, Judge.

Action by Ed T. Hastings against the Dayton Lumber Company. Judgment for plaintiff, and defendant appeals. Reversed.

W. L. Cook, of Houston, for appellant. E. B. Pickett, Jr., of Liberty, for appellee.

McMEANS, J. Ed T. Hastings, minor, by C. B. Hastings, as next friend, brought this suit against the appellant, Dayton Lumber Company, a corporation, to recover damages for personal injuries received by him through the negligence of appellant while in its employment in the capacity of assistant millwright or helper. He alleged in his petition that on June 20, 1910, appellant owned and was operating a sawmill at Dayton, and that plaintiff, while in the performance of the duties required of him as assistant millwright or helper, undertook to repair and put in order one of the slasher chains which had broken or become unhooked, and had wrapped around one of the sprocket or chain wheels, and in so attempting to repair or put said chain in order he caught hold of same and started to pull it back so as to unwind it from around the sprocket, when the said chain broke and became unhooked, and thus caused plaintiff's arm to bound back

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

and strike one of the slasher saws on the rear side, whereby he was injured. The alleged negligence of defendant upon which recovery is predicated is, in the language of the petition, that "the said slasher chain which broke and wound around the sprocket as aforesaid was old and worn and defective and very unsafe, and on that account broke or became unhooked and wound around the sprocket as above alleged, and that, because said chain was worn, old, and defective, it broke and became unhooked or unloosed, one link from another, when plaintiff caught hold thereof and attempted to pull the same from around the sprocket for the purpose of mending it or putting it in order as above alleged, and his arm thereby bounded back and struck the slasher saw with the result above alleged, and the fact of such serious and dangerous defects in said chain was well known to defendant, or by proper inspection it could have known thereof in time to have remedied the same, but it negligently and wrongfully failed so to do, and by the exercise of ordinary care and diligence could have avoided the danger due thereto, and in failing to exercise such care and diligence the defendant was guilty of gross negligence and carelessness." Defendant answered by general denial and by pleas of assumed risk and contributory negligence. The case was tried before a jury and resulted in a verdict and judgment for plaintiff for $6,000, and from this judgment the defendant, after its motion for a new trial had been overruled, has appealed.

After the introduction of the evidence had been concluded, appellant requested the court to give to the jury its first special charge which peremptorily instructed a verdict in its favor. By its second assignment of error appellant contends that the refusal to give this charge was error, because the evidence wholly failed to raise any issue of negligence on defendant's part, in that it did not appear therefrom that there were any circumstances imposing upon defendant any duty to maintain its slasher chains in an unworn condition for plaintiff's benefit. By its third assignment appellant contends that the court erred in refusing to give the peremptory charge, because there was no competent testimony introduced upon which a finding could be based that the negligence alleged by plaintiff was the proximate cause of his injury.

The evidence in the record warrants the following fact findings: At the time plaintiff was hurt the appellant was operating a sawmill, and plaintiff was in its employment in the capacity of millwright helper. His brother, Joe Hastings, was the millwright, and the plaintiff was his assistant. Plaintiff's duties consisted in repairing machinery and appliances connected with the sawmill, and especially the slasher chains, which will be hereinafter referred to, and it was in the discharge of this last-named service that he received the injuries of which he complains. There were 12 slasher chains which worked over a large table called the slasher table, and these chains were operated in such a way as to draw slabs placed upon the slasher tables to the slasher saws. The saws were about four feet apart and a slab of timber drawn to the saws by the chains would be sawed into four-foot lengths. The slasher chain consists of a number of links or units, so made that any one link could, by proper manipulation, be taken out and a new link substituted in its place, or the old links remaining could be put together without welding. Some of the chains in use at the time in question were old and badly worn, and came apart readily when slack or twisted or "cupped up," and frequently parted when being operated over an accumulation of sawdust on the slasher table. They would not come apart, however, in response to a straight pull. The chains were kept in motion by sprocket wheels, which were revolved by steam power, the links of the chains fitting over the cogs of the revolving sprocket wheels. Just before plaintiff was hurt, one of the chains had become unhooked, caused by an accumulation of sawdust on the table, and the end of the chain became wound around a sprocket wheel. The sprocket wheel is at the end of the table, and only three inches from the saw. When the chain parted or became "unhooked," as the plaintiff expresses it, he, as was his duty, set about to repair it. To this end he laid down on the top of the slasher table, and, reaching out for the chain, made an effort to unwind it from the sprocket wheel. He caught the end of the chain and pulled on it when a link of the chain parted or became unhooked from the one next to it, letting his arm fly back into the saws which, as before shown, were in three inches of the sprocket wheel, and he was thereby injured. A new slasher chain would not have come apart as this one did from the force of the pull plaintiff made. Plaintiff testified in this connection: "In general, the condition of these chains in use' there when I was hurt was such that they would very easily come apart, if they became slack or twisted. Then they would come apart in places as I have shown, and I had observed that to be the condition of those chains in general. The reason that I pulled on that chain was that it was wound around the sprocket, and I had to pull on it. I expected it to give, but not so sudden. I had not done anything to find out whether or not it was going to give sudden. I knew it would not if it would not come unhooked. I expected it to give, but not in such a jerk. I knew if I had it straight it would not come apart. It did come apart, and it must have been either kinked, or I did not hold it straight, one." In answer to the question whether he had

told appellant's manager that he was going to get on the table and pull on the chain he replied: "He knew I would have to do it. He told me to do it; not to stop the mill to put the chain on. He told me not to stop the mill to do any light job that way. No; I did not tell him I was going to get up on the table, where I would get against the saw if I pulled on it and it came apart. Frequently before the accident I had to get on the table and do that repair work, but it did not wrap around the sprocket. That was the first time I ever fixed it when it had wrapped around the sprocket. * * * Yes; I knew those saws were revolving right behind me, and that, if I went into them, I would get cut, and I knew the general condition of those chains. I knew they were worn. * * * My work was strictly repair work, and I did not operate any of the machinery during its ordinary operation. When things would get out of order in the mill, I would get them in shape so they would run proper. No, sir; I would not be called to a place in the ordinary course of my occupation until something was out of order. * * * On this particular occasion I went there to make repairs, to adjust the condition of those chains so that they would perform the work they were put there to do. * * * I worked on every part of the mill that got out of repair."

The question that first arises in cases of this character is this: Ought the defendant company to have foreseen that as a result of the negligence alleged, and upon which the right to recover damages for personal injuries is based, the injury, or injuries similar in character, would probably result? To answer this question in the affirmative it must appear that the alleged original cause of the injury was the direct cause, and that no independent or disconnected agency has supervened or brought about the result. The negligence alleged by plaintiff was the use by defendant in its sawmill of an old, worn, defective and unsafe slasher chain, which, on account of its defectiveness, became unhooked and wrapped around the sprocket wheel, so that, when plaintiff pulled upon it to unwrap it, one link became unhooked from the link next to it, allowing his arm to fly back and into the saws. Plaintiff was not injured by the chain while being operated in the manner for which it was provided, so that the mere fact that the chain was defective in the particulars alleged cannot be said to have been the direct cause of his injury. The petition states and the evidence shows that, in addition to the defectiveness of the chain, other agencies supervened, and they were the wrapping of the chain around the sprocket wheel, which was an occurrence not shown to have ever happened before, and which plaintiff says it had not done before during his service at the mill, the pulling

upon the end of the chain by plaintiff in such juxtaposition to the saws that the sudden parting or unhooking of the chain would cause his arm to fly back into the saws, and that at the time he pulled upon it the chain must have been kinked or plaintiff did not hold it straight, otherwise it would not have parted. Ought the defendant have foreseen that as a result of the use of the defective chain the plaintiff would be injured in his attempt to repair it? It is true that, if the chain had not been defective, plaintiff would not have been hurt in the manner he was, because he would not have been called upon to make the repairs, and in the same sense he would not have been injured had his duties been other than to make the repairs. But the active cause which produced the injury was wholly independent of the negligence of the defendant and wholly disconnected with it. As said in Railway v. Bigham, 90 Tex. 227, 38 S. W. 164: "Nothing short of prophetic ken could have anticipated the happening of the combination of events which resulted in the injury to the person of plaintiff." To hold the defendant liable to the plaintiff for the damages sustained by him, we would be required to hold that defendant ought to have reasonably foreseen that the chain would part and become wrapped around the sprocket wheel, that the plaintiff to dislodge it would have to pull upon the broken end, and that in so doing the chain would likely again part, and that plaintiff would place himself in such position with reference to the rapidly revolving saws that the sudden parting of the links would cause his arm to fly back against them. "A party cannot be held responsible for the consequences of an act which ought not reasonably to have been foreseen. In other words, it ought not to be deemed negligence to do or fail to do an act, when it was not anticipated and should not have been anticipated that it would result in injury to any one." Railway v. Bigham, supra; Seale v. Railway Co., 65 Tex. 274, 57 Am. Rep. 602; Railway v. Story, 26 Tex. Civ. App. 23, 62 S. W. 130; Railway v. Kieff, 94 Tex. 337, 60 S. W. 543; Railway v. Rieden, 48 Tex. Civ. App. 401, 107 S. W. 666. Because, in our opinion, the alleged negligence of defendant was not the proximate cause of the plaintiff's injury, and because no actionable negligence of defendant was shown, the assignments of error under discussion must be sustained, and the judgment of the court below is therefore reversed, and judgment here rendered for appellant.

Reversed and rendered.

### Additional Findings of Facts.

In response to the request of appellee, we make the following additional fact findings:

About one month before appellee was hurt he told Mr. Sweat, the superintendent of appellant, that the slasher chains were worn,

and Mr. Sweat promised to get new chains. We adopt as our findings on this point the testimony of appellee: "I knew it was ordered and expected it to come and be put there, and it was there; that is, the chain that came was a smooth chain, which was not the kind we used, the difference being that the smooth chain did not have any lugs to catch hold of the slabs. * * * We had to take the best links from the old chain and put them every three links. We put the lugs into the new chain on Friday, and put two of the new chains on Sunday." Appellee added that it was one of the old chains he was working with when hurt. "When I went to Mr. Sweat and complained to him about these chains, I told him that the chains were worn, and he would have to have some new ones. As to the condition I described to him when telling him about this, I showed him the condition of the chain. I got a piece of chain, and showed him how they worked. The chains were worn so it was dangerous for anybody to fool with them. I told him they would not do the work right. It would put more work on me, and it was dangerous. Mr. Sweat did not order those new chains. My brother ordered them. The drummer came around, and he ordered them, and took it to Mr. Sweat, and he O. K.'d the order. They came quite a little while after they were ordered, and, when they came, we proceeded to put them on. They were not the right kind of chains, and the reason was that there was a mistake in the order, or, rather, the order was all right, but the salesman just simply sent the wrong chains. This mistake was the reason we did not put them all on."

We further find that the duty did not rest on appellee to inspect machinery and appliances to determine whether they were in proper condition. We further find that, when appellee undertook to unwrap the chain from the sprocket, he could not see the condition of the chain under the sprocket, although he looked to see, and he did not know its condition at the time he made the pull further than he knew that the chain was broken or had parted, and that in attempting to repair it he was in the discharge of the service for which he was employed.