### GULF REFINING CO. v. SIMMS.
#### (No. 6586.)

(Court of Civil Appeals of Texas. Galveston. April 28, 1914. Rehearing Denied June 11, 1914.)

1. MASTER AND SERVANT (§ 219*)—INJURIES TO SERVANT—ASSUMED RISK—EVIDENCE.

Where plaintiff, who was employed to do certain work on a barge, during the noon hour seated himself on the combing of an open hatch while eating his dinner, suddenly lost consciousness, and fell backward through the hatch to the bottom of the hold, the danger being open and obvious, he assumed the risk.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 610–624; Dec. Dig. § 219.*]

2. MASTER AND SERVANT (§ 129*)—INJURIES TO SERVANT—DANGEROUS PREMISES—OPEN HATCH—PROXIMATE CAUSE.

Where plaintiff, while at work on a barge, seated himself during the noon hour on the combing of an open hatch, and losing consciousness fell backward into the hold, defendant's negligence, if any, in permitting the hatch to remain open or in failing to construct a railing or barrier around the opening, was not the proximate cause of the injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 257–263; Dec. Dig. § 129.*]

3. MASTER AND SERVANT (§ 121*)—INJURIES TO SERVANT — NEGLIGENCE — REASONABLE CARE.

Where plaintiff during the noon hour while employed on a barge seated himself on the combing of an open hatch, and losing consciousness fell backwards into the hold and was injured, and in an action for injuries claimed that the hatch combing was a reasonably safe place for him to sit and that his doing so was not dangerous per se, defendant was for the same reason not negligent in failing to anticipate that a person taking such position would suddenly lose consciousness and fall into the hold, and was therefore not negligent in failing to guard against such an accident.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 228–231; Dec. Dig. § 121.*]

Appeal from District Court, Jefferson County; John M. Conley, Judge.

Action by Jules R. Simms against the Gulf Refining Company. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

D. Edward Greer and Hightower, Orgain & Butler, all of Beaumont, for appellant. Blain & Howth and M. G. Adams, all of Beaumont, for appellee.

McMEANS, J. The appellee, Jules R. Simms, brought this suit against the appellant, Gulf Refining Company, to recover damages for personal injuries sustained by him while in appellant's employment. He alleged that he was ordered by his foreman, also an employé of appellant, to do some work on the barge Conemaugh, a boat belonging to appellant, and that in the course of performing such work, it becoming noon time, he and other employés working with him stopped for lunch, and for the purpose of eating his lunch, he took a seat on the combing of a certain hatch on the barge, which was customary for the employés working about the barge to do, and that while so sitting on the hatch combing he suddenly, and without notice or warning to himself, and without any reason to anticipate sickness and danger, temporarily lost control of his physical powers and mental faculties, and without fault or negligence on his part became dizzy, collapsed, and fell backwards into the hatch, which was open and unguarded, and by reason thereof sustained the injuries for which he sued. He further alleged that on the occasion in question he was eating his lunch at said place at the express and implied invitation of appellant and its agents; it being in summer time and the weather warm, and the combing of the hatch being a convenient seat and sheltered by an awning or canopy. The following grounds of negligence were alleged: That defendant left the hatch open and failed to cover the same in a safe and secure manner, failed to construct railings, balustrades, or guards around the hatch, and failed to use ordinary care to inspect the barge at reasonable intervals for the purpose of discovering whether said hatch was open or partly open or in dangerous condition. There was further ground of negligence alleged, but, as no evidence was offered to prove it, a statement of it is omitted. The appellant pleaded the general denial, assumed risk, and contributory negligence. The case was tried before a jury and resulted in a verdict and judgment for appellee for $5,000, from which the appellant has prosecuted this appeal.

Appellant by its first assignment of error complains that the verdict and judgment were not warranted by the evidence, in that the evidence was insufficient to show that appellant was negligent in the manner alleged, or, if negligent, that such negligence was the proximate cause of plaintiff's injury, but that it does show that plaintiff was guilty of contributory negligence and that his injuries resulted from a risk assumed by him.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

By its second assignment of error appellant complains of the refusal of the court to give its first special charge peremptorily instructing the jury to return a verdict in its favor.

Appellee was severly injured while at work on the barge Conemaugh by falling backward through a hatch. The hatch was what is known as a "booby hatch," which is an opening through the deck of the vessel and serves as a hoistway. Appellee at said time was in the employment of appellant in the capacity of machinist helper, and the barge on which he was working belonged to appellant. He was sent by his foreman to assist Mr. Prafka and Mr. Singleton, appellant's employés, to do certain work on the barge, and because of the distance of the boat from his boarding house, making it impracticable for him to go to lunch, he took his lunch with him, as also did the others. He and the other two got to the barge about 11 o'clock in the forenoon, and each of them deposited his lunch near the stern of the barge, close to the ice box and water cooler, and close to the boathouse in which there was a stove upon which coffee could be warmed. All three then went to work at the bow of the boat, which was something like 175 feet from the booby hatch, and worked there until shortly after noon, when they stopped for lunch. All of them then returned to the stern to eat their lunches, and for this purpose Prafka and Singleton seated themselves upon coils of rope near the booby hatch. Appellee heated his coffee in the boathouse and, coming out on the deck to eat his lunch, seated himself upon the combing of the open hatch, near his companions. The hatch, or opening through the deck, was about three feet square, and was surrounded by heavy timbers about three inches thick placed on edge and fastened together at the corners, and extended the height above the deck of eight or ten inches, and the timbers so placed and joined is what is called the "combing." It was upon the edge of one of these timbers that appellee tood his seat, with his back toward the opening. He sat on the combing in this position for about 20 minutes and had just about finished his lunch, when suddenly, without any premonition, he temporarily lost consciousness and fell backward through the hatch and into the hold of the vessel and was injured. It was usual and customary to keep the hatch closed except when necessary to open it for use as a hoistway, or for ventilation, and at the time in question it was not necessary for it to be open for either of said purposes. The reason for keeping it closed was to prevent persons, especially "landlubbers" who might be on deck, from falling through. The cover is called "hatch cover" and is just large enough to fit the opening, and when in position is flush with the upper edge of the combing. One of the officers of the barge had instructed one of the boatmen to keep the cover on, but it had been taken off early that morning to get some rope out of the hold and was not replaced.

It was shortly after noon when plaintiff seated himself upon the combing, a bright day, and there was nothing to prevent him from seeing that the hatch was open if he had looked or had paid the least attention to his surroundings. He says he did not look to see whether it was open or not. He does not say, however, that he saw it was open. Upon this point we give his testimony:

"I did not take any observation or inspection of the place where I sat down. I only looked for a place to sit down and eat lunch and rest, and I never noticed much where we did sit down. I did not have any conscious knowledge of the identical place I was sitting down. I never noticed and I never thought. All I thought of was a place to sit down and be with the other fellows; we were all together. I don't know how I came to fall. I don't know what caused me to fall. I paid no attention to where I was sitting down, and my only desire was to be with my fellow workers there. I didn't know whether the hatchway was opened or closed. I couldn't say whether I was sitting on the combing of the hatchway, or partly on the combing and partly on some ropes that might have been lying around there. I took no notice at all of that. I did not suspect or realize that I was in danger at all when I sat down there with my friends to eat lunch. I thought I was as safe as I am now. I never thought a thing about it. * * * Of course I saw this hatch, because I sat down on it; if I hadn't seen it, I don't suppose I would have sat on it, but I never took no notice of what I was sitting on. * * * I don't know what part of the hatch I was sitting on, only I know I was facing the stern. I did not notice when I went to sit on the hatch whether there was any lid on it or not. * * * If I had looked at that hatch combing before I sat down on it, I could have seen whether there was a cover on it or not. I might if I had taken close notice of it. I suppose, if I had been walking around and wanted to sit down and looked at it, I could have told whether there was a cover on it or not. I just didn't notice at all; that's the fact about it. I don't know of anything that would have kept me from seeing it if I had looked, unless it was the condition I was in. You take a man who is working and he gets tired, and he only had a few minutes to get his lunch in, he don't notice anything. I didn't notice it, and I don't suppose the other fellows noticed it either."

The witness had testified that he had quit work the day before at about 7 o'clock in the evening and went to sleep at 10 o'clock and slept all night; that for the 38 hours previously he had been steadily at work, and for that reason did not rest as well as he otherwise would, although he slept. Continuing, he said:

"I told Mr. Howth (his attorney) that I was a little bit tired, but that I did not feel any more tired than if I had not done that extra work (referring to the 38 hours' continuous work); in other words, I felt very well. I had rested some the night before, not very much. I suppose I was entirely in possession of my senses; at least I think I was. * * * I suppose I completely lost consciousness. I don't remember starting (to fall); I remember hitting the floor, but I don't remember starting. If I had, I would not have started. * * * I have never had any disease or trouble of this kind before, losing consciousness, getting dizzy,

and falling. * * * I don't know as there was any other places or things I could have sat down on besides this hatch; I never noticed, if there was. I don't remember what they (his companions) sat on. I just walked up to the hatch and sat down, and didn't pay any attention to it. I didn't notice whether there was any other place to sit down there or not. I did not have any particular reason for selecting that place, only we were all three near together."

The uncontradicted evidence shows that other than the combing there was no railing, balustrade, or other guard around the hatch, and if there had been appellee upon losing consciousness might not have fallen into the hold.

[1] We are of the opinion that, under the circumstances of this case, the appellee was not entitled to recover, and the court erred in not giving a peremptory instruction for defendant as requested. The hatch was open at the time appellee sat upon the combing, and if he did not know this it was because he did not exercise any care whatever in the selection of a place to sit. He is chargeable with a knowledge of the laws of nature, and if he knew the hatch was open was bound to know that if from any cause he lost his balance while sitting upon the narrow edge of the combing he was apt to fall through the opening into the hold. And even if he did not know that the hatch was open before he sat down, it is inconceivable that he was not apprised of that fact when he took his seat. The cover, had it been on, would have been flush with the upper edge of the combing, and in that case the combing and cover would have made a platform 8 or 10 inches above the deck, and appellee would have had a flat place to sit, but as it was he must necessarily have balanced himself upon the narrow edge of the combing, and the sense of feeling must at once have apprised him, or would have apprised any person exercising ordinary care for his own safety, that the cover was not on and the hatch was open. The fact that the hatch was open was obvious and patent, and if appellee did not know it he was negligent, in the circumstances, in not knowing it; and if he did know it before he said down, or became apprised of it after he took his seat, he assumed the risk of taking the position he did or remaining in that position after he was apprised of it. Dallas Gas Co. v. Patton, 147 S. W. 313; Railway v. Anderson, 124 S. W. 1004; Bowden v. The Sir Garnet Wolseley (D. C.) 41 Fed. 896; Railway v. Hynson, 101 Tex. 547, 109 S. W. 929.

[2] If it should be conceded that appellant was guilty of negligence in not keeping the cover on the hatch, we are of the opinion that such negligence was not the proximate cause of the appellee's injury. Appellee, to excuse his contributory negligence, contends that it was not dangerous per se for him to sit on the combing. He says:

"There was nothing intrinsically dangerous in taking such position under the circumstances; it could become dangerous only through subsequent happenings. If any one had carelessly or intentionally run against him, or thrown something against him, it would then be dangerous to be in such position. If he became suddenly sick or dizzy and collapsed, or had heart failure, or was providentially stricken in some other manner so as to lose control of his mental and physical faculties, as actually happened in the case at bar, such position would then become dangerous."

If then it was not dangerous per se for appellee to sit where he did, and for that reason appellee was not negligent in taking his seat upon the combing surrounding the open hatch, it is because a person of ordinary prudence would have done as he did under similar circumstances. If then a person of ordinary prudence would have acted as appellee did, this very test would relieve the appellant of negligence to appellee in not having the hatch covered. Railway v. Bradford, 66 Tex. 737, 2 S. W. 595, 59 Am. Rep. 639.

[3] Appellee says that there was no danger in his sitting on the combing, unless some intervening cause arose, such as his being run against or of his becoming dizzy and collapsing and thereby caused to fall, and contends that by reason of becoming unconscious and being thereby caused to fall he is relieved of all contributory negligence. If it was a reasonably safe place for him to sit, and he would not have fallen but for the happening of the event that caused him to fall, and which happening he could not have reasonably anticipated, was the appellant required to anticipate the happening of the event, and to use greater care than it did to make safer the place which, in the absence of such happening, according to appellee's contention, was already safe? Ought the appellant to have forseen that as a result of leaving the cover off the appellee or some other person, while sitting on the combing—a thing not dangerous per se, according to appellee's contention—would lose consciousness and fall? We think not. As said by the Supreme Court in Railway v. Bigham, 90 Tex. 227, 38 S. W. 164:

"Nothing short of prophetic ken could have anticipated the happening of the combination of events which resulted in the injury to the person of the plaintiff." Dayton Lumber Co. v. Hastings, 152 S. W. 863; Railway v. Seale, 65 Tex. 281, 57 Am. Rep. 602; Railway v. Story, 26 Tex. Civ. App. 23, 62 S. W. 130.

The fact that there was no railing or other guard around the hatch does not alter the case, for the absence of these was patent, and appellee by the exercise of the slightest care was bound to know it.

Under the facts established by the undisputed evidence, the appellee is not entitled to a recovery, and the judgment of the court below is therefore reversed, and judgment here rendered for the appellant.

Reversed and rendered.