SAUER v. PALMER PRESS BRICK
WORKS. (No. 1595.)

(Court of Civil Appeals of Texas. Texarkana.
March 2, 1917. Rehearing Denied
March 29, 1917.)

1. MASTER AND SERVANT ⊜⟳197—INJURIES TO
MACHINIST IN BRICK PLANT—PROXIMATE
CAUSE.

In an action by a machinist in a brick plant,
for damages for injuries sustained while in pit
removing loose metal cups from a defective ele-
vator belt, plaintiff *held* not entitled to recover,
the proximate cause of injury being starting of
elevator by plaintiff's helper, a fellow servant.

[Ed. Note.—For other cases, see Master and
Servant, Cent. Dig. §§ 489, 490.]

2. MASTER AND SERVANT ⊜⟳217(14)—INJURIES
TO SERVANT—ASSUMPTION OF RISK.

Where servant was aware of the structure
of the elevator box of which he complains dur-
ing employment for about seven years, he as-
sumed any risk for injury from such source,
where the only danger lay in starting elevator
while he was engaged in pit cleaning it out.

[Ed. Note.—For other cases, see Master and
Servant, Cent. Dig. § 584.]

Error from District Court, Ellis County;
F. L. Hawkins, Judge.

Action by Charles Sauer against the Palm-
er Press Brick Works. Judgment for de-
fendant and plaintiff brings error. Affirmed.

The action is by the plaintiff in error
against the defendant in error for damages
for personal injuries. The petition alleged
negligence in two particulars: First, the fur-
nishing of an elevator belt which was worn
and old and insufficient to sustain the metal
cups ιattached thereto; and, second, the
failure to furnish a safe place in which to
work, in that the foot or bottom of the
elevator box was not properly constructed.
It was further alleged that complaint had
been made of the belt to the president of
the defendant, and a new belt had been
promised. The defendant, besides denial,
pleaded assumed risk and that the injury
solely resulted from the act of a fellow serv-
ant of the plaintiff in starting the machinery
with which he was at work. After hearing
all the evidence, the court peremptorily in-
structed a verdict in favor of the defendant.

The defendant was engaged in operating
a brick plant at Palmer, Tex. The plaintiff
was the machinist for the defendant, and had
been for about eight years in charge of the
machinery of the plant. His duties were to
keep the machinery in repair and in proper
operating condition. Plaintiff had a helper
named Jolly Tucker. For the purpose of
carrying the dirt used in the manufacture of
the brick from the dry-pan, fed through a
chute near the ground, to the hopper up-
stairs in the building, an elevator was used,
extending from the dry-pan to the hopper.
This elevator consisted of a wooden box
through which operated a leather belt, to
which were attached about 56 metal cups
or buckets, each of the size of 5½ by 10
inches. These cups were attached to the
elevator belt by metal brads, and as the cups
passed up they pick up or catch the dirt that
comes into the dry-pan through the chute.
At the bottom of the elevator box there is a
pulley, and up near the roof of the build-
ing there is a line shaft with a pulley, and
the elevator belt runs over these pulleys.
On the line shaft there was another pulley,
over which the drive belt connected with the
engine operated. On the day in question
the elevator choked up, causing the operation
of the same to stop. This was caused by one
or two of the metal cups becoming partially
loose or unfastened from the belt and catching
on the side of the wooden box of the elevator
at the bottom of the elevator shaft. The
elevator belt was old and worn and in bad
condition, and on account of this condition
the brads in the metal cups would pull out
of and come loose from the belt. While the
operation of the belt was stopped the plain-
tiff, as was his duty, undertook to relieve the
condition of the elevator. In order to do the
work the plaintiff, as was the way to do this
work, got in the pit or hole on the ground
at the bottom of the elevator shaft, and ex-
tended his right hand and arm up underneath
and into the lower part of the elevator box
or shaft where it was clogged, located a loose
metal cup, and attempted to unfasten it from
the dirt which obstructed the movement of
the elevator. The metal cup had become
loose by reason of one of the metal brads
which held it to the belt pulling out of the
belt. As plaintiff took hold of the loose cup
with his right hand, and started to pull
it down and out of the belt, the machinery
and belt suddenly started in operation
grievously injuring the plaintiff's right hand
and fingers. Jolly Tucker, a helper to the
plaintiff, started the machinery to working
while plaintiff was engaged in cleaning the
elevator bottom. Tucker said, "I put the
belt on to start the elevator; the elevator
started then." Plaintiff testified:

"I was pulling that off [meaning the loose
metal cup] when the machinery and belt started
up, and it caught my hand. Jolly Tucker was
working at the plant; he was cleaning up,
helping me if I needed any help; he was my
helper—that is, he worked first one place and
another; he helped me. If the foreman needed
him any place around the yard, he would use
him there. Tucker did not have authority to
hire hands there to work nor authority to dis-
charge them. Mr. Tucker was really under me;
he was not as high grade employé as I was.
I had no authority to employ or discharge hands.
The foreman was the man who did that. I don't
know of my own knowledge—that is, I am not
positive—who started the machinery up. Of
course, Mr. Tucker was the man that was to
be up there. All I know about it is that he left
me and said he would go back upstairs. * * *
If that belt had not been started up, my hand
would never have been hurt. If the belt had
not been defective and the cups torn loose, my
hand would not have been cut. * * * I got
hold of the cup and started to pull it down;
the belt was put on and it caught my hand.
That was about five or six minutes after I gave
the order not to put it on."

The plaintiff further testified that there should have been a door in the elevator box to enable him to get inside the elevator box to the belt when it was clogged. The elevator box, according to the undisputed evidence, existed as constructed during all the time that plaintiff was employed by the defendant, and he used the same method for cleaning out the box on the occasion of the injury as he had done many times before; and the plaintiff was thoroughly familiar with all conditions existing at the plant. It was further shown that the plaintiff called the attention of the president of the company to the condition of the belt, and requested him to get a new belt, and that the new belt was gotten and was there ready to be installed at the time of the injury.

Chas. F. Clint, D. B. Eades, and Eric Eades, all of Dallas, for plaintiff in error. Thomas & Rhea, of Dallas, for defendant in error.

LEVY, J. (after stating the facts as above). [1] The appeal is to review the correctness of the ruling of the trial court in peremptorily instructing a verdict for the defendant. And it is believed that, according to the evidence in the case, it should be held that the court did not err. The evidence sufficiently shows that the leather belt was old and worn and insufficient to hold the metal cups fast and secure to the belt, and that because of the deficient condition of the leather belt several of the metal cups had become loose and unfastened from the belt. And the evidence would warrant a finding by the jury that the furnishing and use by the defendant of the worn and insufficient belt was negligence. But at the time the plaintiff was doing his work in removing the loose metal cup from the defective belt, the belt was not being operated and the machinery was stopped. And the evidence shows without dispute that the plaintiff's injury did not proceed from his work of itself in removing the loose metal cup from the defective belt or because of the defective belt. The sudden starting of the machinery, which had been stopped for the purpose of safely doing the work in hand, caused the belt to move upward, and this act of starting the machinery caused the plaintiff's hand to be injured. Situated as plaintiff's hand was at the time, inside the elevator shaft, it would have been injured by the sudden operation of the belt, irrespective of whether the belt was defective or not defective. And therefore it would conclusively appear that the sole proximate cause of the plaintiff's injury was the act of Jolly Tucker in starting the machinery when he did, and that Jolly Tucker and the plaintiff were fellow servants. Lumber Co. v. Hastings, 152 S. W. 863; Oil Co. v. Edgmon, 155 S. W. 1012; Jones v. Lumber Co., 162 S. W. 420.

[2] The plaintiff claimed that the elevator box or shaft was not properly constructed, in that "there ought to have been a door in that elevator box to enable me to get inside of the box to the belt when it clogged up." The elevator box or shaft, it appears, a permanent structure, and had existed as first constructed for more than eight years. The plaintiff testified:

"When I first went to work there, that elevator was just like it was when I got hurt. The box went up to the top of the building and came down in this pit. I had to get in the pit and clean the box when it was choked all the time I worked there, the same as I did on the occasion I was hurt. I was there six or seven years. * * * I went down in that pit and cleaned it out just the same way I had cleaned it out lots of times before, and I frequently cleaned it out; had frequently gone down into the hole and gone through just exactly the same thing I did that time and cleaned it out; I had been doing that ever since I had gone there to work the first time, and I did it that time just the same way I had always done it."

Thus it conclusively appears plaintiff was aware of the structure of the elevator box or shaft as it existed and of which he complains. And this evidence would plainly show that no danger existed on account of its construction as it existed, but for the fact that the machinery was started in operation while plaintiff had his hand in a position to be caught in the elevator. The particular danger arose and proceeded from starting the machinery, and this danger was just as apparent to the plaintiff accustomed as he said he was to machinery and the operation of this elevator, as to any one connected with the defendant. Suggesting, as plaintiff does, the improvement that should have been made in the elevator box or shaft, it may not be said he was ignorant of the dangers of the condition that existed. It is believed that, under the evidence most favorable to the plaintiff any injury arising to him from the bottom of the elevator box or shaft not being, as claimed by plaintiff, properly constructed, was assumed by plaintiff. Oil Co. v. Shaw, 27 Tex. Civ. App. 65, 65 S. W. 693; Brown v. Miller, 62 S. W. 547.

The judgment is affirmed.