## McCANN et al. v. GRIDER.

### No. 9523.

Court of Civil Appeals of Texas. San Antonio.

Feb. 27, 1935.

Rehearing Denied June 12, 1935.

Gordon Boone, of Corpus Christi, and Felix A. Raymer, of Houston, for appellants.

H. S. Bonham, of Corpus Christi, Gaines, Gaines & Roberts, of San Antonio, and W. B. Moss, of Sinton, for appellee.

SMITH, Justice.

This action, for damages for personal injuries, was brought by F. C. Grider against

G. H. McCann and H. L. McCann, partners, alleged to have been subject to, but not subscribers under, the terms of the Workmen's Compensation Law (Vernon's Ann. Civ. St. art. 8306 et seq.).

The McCanns were engaged in the business of operating their large farm acreage in San Patricio and Nueces counties. One of their cotton farms, of about 1,000 acres, was located in an isolated section of Nueces county, so far removed from any public gin as to make it necessary that the owners furnish their own ginning facilities.

Accordingly, and being themselves without experience in the gin business, they engaged Grider, a ginner with several years' actual and active experience, to plan and build a ginhouse, to purchase and install the necessary machinery and equipment, and to operate the plant when completed. Under this arrangement, the gin plant was established in accordance with Grider's plans and under his supervision, including the selection and installation of the machinery and equipment utilized. And, the gin being completed to his liking, Grider assumed control of the operation of the plant, and continued the direction thereof until he suffered the injury here complained of.

It should be added that the McCanns were engaged on this farm in propagating, cultivating, and marketing a certain highly developed species of "pedigreed" cotton, and, in furtherance of that activity and the preservation of the purity of the seed of that species, agreed to gin the product of their neighbor, Spessard, who operated a cotton farm of 800 acres, planted to the same "pedigreed" cotton. By this arrangement, the use of the plant was restricted to the ginning of McCanns' and Spessard's cotton. It was not open to the public.

This action was brought by the employee upon the theory that the McCanns were operating a gin, in which operation they employed more than three persons, whereby they were brought within the provisions of the Workmen's Compensation Act, requiring them to carry compensation insurance for the benefit of their employees; and that, as they had not subscribed to the act or taken out such insurance thereunder, this common-law action was brought against them under section 1, art. 8306, R. S. 1925, which deprives defendants, in such cases, of the defenses of contributory negligence, negligence of fellow servants, and assumed risk, but does not relieve the employee of the burden of showing that his injury is proximately caused by the negligence of the employer. The injured employee recovered upon this theory, and the McCanns have appealed.

The parties raise the question of whether those employed by appellants in the running of the gin as a necessary adjunct of the latter's farming operations may be classified as farm laborers within the purview of the Compensation Act; or whether, in operating the gin plant in connection with their principal activity of farming, appellants took a different, industrial, classification, requiring them to subscribe to the Compensation Act, and carry insurance thereunder. The question is an interesting one, with substantial difficulties, but, in view of the disposition to be made of the appeal, its determination is not necessary to the decision, and will not be here decided.

The accident of which Grider here complains happened after the gin had been in operation a few days, and fifty-two bales of cotton had been ginned. It appears from the record that the machinery was designed to keep the gin saws clear of accumulating lint by air suction or blast created by a system of fans and pulleys; that this suction or blast was proving insufficient, through lack of speed in the fans and pulleys; that by this lack of co-ordination the lint accumulated upon and clogged the saws and ribs; that Grider, aware of the defects in the machinery, and of the clogging of lint in the saws, decided to stop the gin and remove the accumulated lint from the saws by pulling it off with his fingers; that with this in mind he went into the engine room and "kicked the clutch out," thereby disconnecting the power from, and stopping the movements of, the machinery. Grider testified:

"So I went in and threw the clutch out and walked back to the end of the room and stood there a few minutes to see how things were going, just stood there and noticed everything; then I walked back into the gin house and saw that the gin plant was shut down and that the motor was running very slowly and had practically stopped. I knew that the cotton was clogging up on the ribs of the gin saws, and when I got back in there I sat down on the floor in front of the gin stand and reached up with two fingers, like that (indicating), to catch that cotton and pull

it out from the ribs, and when I did the saws caught my hand. In the meantime, when I sat down on the floor in front of the gin stand, why, I looked at the shaft between the two gin stands—well, it was painted, I don't know whether you would call it Persian blue or what it was that they put on all those things to keep them from rusting, but it was kind of sticky and gummy—and I looked at that and it looked to me like it was stationary—standing still. Like I say, when I went in there the motor of the engine had practically stopped—however, it was making, I would judge, probably 15 or 20 revolutions to the minute."

On cross-examination Grider testified: "Q. The whole truth of the situation in a nutshell is, if you hadn't lain down on the floor and put your left hand in those revolving gin saws, you wouldn't have got hurt, would you? A. Why, certainly not."

This constituted all the testimony in the record bearing upon the circumstances of the accident.

The trial court submitted the following special issue to the jury: "Do you find from a preponderance of the evidence in this case that the fan and pulley installed in said gin previous to the injury to plaintiff were insufficient to supply a current of air strong enough to clear the gin saws of cotton that might collect therein?"

The jury answered that issue in the affirmative, and then found that appellants were negligent in failing to supply the fan and pulley inquired about, and that such negligence was a proximate cause of appellee's injuries. No other question relating to appellants' liability was submitted to the jury, and appellants contend in their third proposition that the undisputed evidence shows conclusively, as a matter of law, that the lack of air pressure in the gin machinery was not the proximate cause of the accident to appellee. We sustain this contention, and, without determining whether appellants were exempt from the operation of the Workmen's Compensation Act, and therefore entitled to the defenses vouchsafed them under the common law, we hold that the evidence conclusively negatives any causal connection between any negligence of appellants and the injury sustained by appellee.

Obviously, there is nothing in this testimony to support an inference of any causal connection between lack of speed in the air fan and pulley and the injury to appel-

lee's hand. The fan and pulley had been stopped, and had ceased to be factors in the situation;· even so, had they continued in full operation, they were wholly disconnected from, and could have had no influence upon, the agency which actually inflicted the injury to appellee. The agency inflicting that injury was the revolving gin saws, under the hood of the gin stand. The moving saws and appellee's moving hand were the only active factors in the situation. Those factors effectually intervened to definitely separate the remote act of appellants' negligence in furnishing insufficient fan and pulley from the agency inflicting the injury, and therefore from the injury itself.

To constitute proximate cause, it must appear that the injury was such as the party charged could or should have reasonably foreseen as a result of the act alleged. Applying that test to the case made here, can it be said that appellants could reasonably have foreseen that, as a result of the alleged insufficient fan and pulley, appellee, with many years' actual and active experience with just such machinery and in just such situations and conditions, would have put his hand among those gin saws while they were revolving at such terrific speed as to cut and mangle his arm to the point of amputation? On the other hand, is it not perfectly obvious that appellee, so experienced, was bound to expect the very injury he received if he put his hands among the saws without first ascertaining with certainty that they had come to rest?

Clearly the sole proximate cause of this accident was the act of appellee in putting his hand among the revolving saws, knowing that to do so would mean at least the loss of that member. Dayton Lumber Co. v. Hastings (Tex. Civ. App. writ ref.) 152 S. W. 863; Gulf Refining Co. v. Simms ·(Tex. Civ. App. writ ref.) 168 S. W. 379.

This conclusion leads to reversal, and, as the facts upon the controlling issue in the case are fully and conclusively established, judgment will be here rendered that appellee take nothing, and pay all costs in this and the trial court.

### On Motion for Rehearing.

In the original opinion it was stated that the only "testimony in the record bearing upon the circumstances of the accident" was that quoted in the opinion. This state-

ment was error, in that this further testimony, adduced from appellee upon redirect examination, should have been included in the quotation:

"Q. If there had not been any clogging of the gin saws and necessity for removing the lint, would this injury have occurred? A. No, sir.

"Q. In answer to the question that was propounded, to you by Mr. Raymer, the question being: Wasn't the whole trouble because you sat down or laid down and stuck your hand up in the gin stand, to which you answered 'yes'—Just what did you mean by the whole trouble? A. Well, I meant this, that if the saws hadn't had that cotton in there I wouldn't have stuck my hand in that gin to clean that cotton out."

We are of the opinion that the additional testimony is immaterial to the decision, but have adduced it here in deference to appellee's insistence, in his motion for rehearing.

The motion is overruled.